PUBLIC VERSION OF DOCUMENT
SOUGHT TO BE FILED UNDER SEAL

John P. Bovich (SBN 150688)
Email: jbovich@reedsmith.com
Scott D. Baker (SBN 84923)
Email: sbaker@reedsmith.com
Jonah D. Mitchell (SBN 203511)
Email: jmitchell@reedsmith.com
Adaline J. Hilgard (SBN 173213)
Email: ahilgard@reedsmith.com
REED SMITH LLP
101 Second Street
Suite 1800
San Francisco, CA 94105-3659
Telephone: +1 415 543 8700
Facsimile: +1 415 391 8269

Attorneys for Defendants
BOX, INC. and CARAHSOFT TECHNOLOGY CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| OPEN TEXT, S.A., <br><br> Plaintiff, <br><br> vs. <br><br> BOX, INC. and CARAHSOFT TECHNOLOGY CORPORATION, <br><br> Defendants. | No.: C 13-04910 JD <br><br> **DEFENDANTS' MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF MS. KRISTA HOLT** <br><br> Date: TBD <br> Time: TBD <br> Place: Courtroom 11 <br><br> Compl. Filed: June 5, 2013 <br> FAC Filed: December 23, 2013 <br> Trial Date: February 2, 2015 <br><br> Hon. James Donato |

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that as soon as the matter may be heard on a date and time to be determined by the Court, Defendants Box, Inc. and Carahsoft Technology Corporation (collectively, "Defendants"), by and through their counsel, will move to exclude the testimony and opinions of Plaintiff Open Text, S.A.'s damages expert Ms. Krista Holt pursuant to Federal Rule of Evidence 702.

Defendants seek an order precluding Ms. Holt from offering any opinions or testimony regarding damages for alleged infringement of the Groupware or File Synchronization patents. This Motion is made on the grounds that Ms. Holt's testimony fails to meet the reliability and relevancy requirements set forth in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and Rule 702.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Jonah D. Mitchell and any exhibits thereto, the Proposed Order submitted herewith, all pleadings and paper on file in this action, and such further evidence that may be submitted to the Court at or before the hearing.

# Table of Contents

Page

I. INTRODUCTION .................................................................................................... 1

II. LEGAL STANDARDS ........................................................................................... 3

III. MS. HOLT'S ROYALTY RATE OPINIONS ARE FUNDAMENTALLY FLAWED AND MUST BE EXCLUDED ................................................................ 3

    A. Ms. Holt Improperly Relies On ▓▓▓▓▓▓▓▓▓▓ For Her Royalty Rate Opinions .......................................................................... 3

        1. Ms. Holt Conceded, As She Had To, That ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ................................................. 5

        2. Ms. Holt's Efforts At Deposition To ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Confirms The Lack Of Reliability In Her Testimony .................. 7

    B. Ms. Holt Ignored The Licensing History For The Groupware Patents In Determining Her Purported Royalty Rate ................................................. 11

IV. MS. HOLT'S ROYALTY BASE OPINIONS ARE ALSO FUNDAMENTALLY FLAWED ............................................................................. 13

V. CONCLUSION ...................................................................................................... 15

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF AUTHORITIES

**Cases**

*Atlas IP, LLC v. Medtronic, Inc.*,
  2014 U.S. Dist. LEXIS 158787 (S.D. Fla. Oct. 6, 2014) .................................................. 7

*Cornell Univ. v. Hewlett-Packard Co.*,
  609 F. Supp. 2d 279 (N.D.N.Y. 2009) ............................................................................. 3

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ......................................................................................................... 3

*DSU Med. Corp. v. JMS Co.*,
  296 F. Supp. 2d 1140 (N.D. Cal. 2003) ........................................................................... 9

*Dynetix Design Solutions, Inc. v. Synopsys, Inc.*,
  2013 U.S. Dist. LEXIS 120403 (N.D. Cal. 2013) ..................................................... 3, 13

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
  No. C03-1431 PFJ, 2012 WL 761712 (N.D. Cal. 2012) ............................................. 5, 6

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) ....................................................................................................... 10

*Golden Bridge Tech. v. Apple Inc.*,
  2014 U.S. Dist. LEXIS 68564 (N.D. Cal. 2014) ........................................................... 13

*GPNE Corp. v. Apple Inc.*,
  2014 U.S. Dist. LEXIS 53234 (N.D. Cal. 2014) ........................................................... 10

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ......................................................................................................... 3

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
  694 F.3d 51 (Fed. Cir. 2012) ................................................................................... 3, 4, 9

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) ........................................................................... 1, 3, 4, 10

*Oracle Am., Inc. v. Google, Inc.*,
  847 F. Supp. 2d 1178 (N.D. Cal. 2012) ........................................................................... 4

*Reinsdorf v. Skechers, U.S.A.*,
  922 F. Supp. 2d 866 (C.D. Cal. 2013) ............................................................................. 9

*ResQNet.com, Inc. v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010) ................................................................................. passim

*TV Interactive Data Corp. v. Sony Corp.*,
  929 F. Supp. 2d 1006 (N.D. Cal. 2013) ........................................................................... 4

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2001) ..................................................................................... 10

*Versata Software, Inc. v. SAP Am., Inc.*,
  717 F.3d 1255 (Fed. Cir. 2013) ..................................................................................... 13

*VirnetX, Inc. v. Cisco Systems, Inc.*,
  767 F.3d 1308 (Fed. Cir. 2014) ........................................................................... 2, 13, 15

*Whitserve LLC v. Computer Packages, Inc.*,
  694 F.3d 10 (Fed. Cir. 2012) ......................................................................................... 10

**Statutes**

35 U.S.C. § 284 .................................................................................................................. 3

**Rules**

Fed. R. Evid. 702 ............................................................................................................... 1

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Under the Federal Rules of Evidence, a qualified expert may testify only if (1) the expert's scientific, technical, or other specialized knowledge will assist the trier of fact; (2) the expert grounds the testimony in sufficient facts or data; and (3) the expert applies reliable principles and methods to the facts (4) in a reliable manner. Fed. R. Evid. 702. The damages testimony offered by Open Text's expert Krista Holt must be excluded because it is unreliable, ignores critical historical facts, and is based on methodologies that conflict with Federal Circuit precedent. In no circumstances can her unfounded damages testimony assist a trier of fact.

Ms. Holt opines that the parties would have agreed to royalty rates totaling ▓ : (1) ▓ for the Groupware patents and (2) ▓ for the File Synchronization patents. To get there, Ms. Holt does not rely on a single patent license, let alone any licenses of the patents-in-suit. Instead, she relies on ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Ms. Holt's unfounded supposition fails the most basic requirements for expert opinion testimony that follow from Fed. R. Evid. 702.

**First**, the Federal Circuit repeatedly has refused to allow the use of non-comparable agreements and unreliable methodologies to inflate the royalty rate to present to the jury. *See, e.g., ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 870 (Fed. Cir. 2010); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). Yet, the agreements Ms. Holt relies on not only are ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.[1]

---

[1] In deposition, Ms. Holt tried to obscure her reliance on these agreements. ▓▓▓▓▓

**Second**, Ms. Holt's opinions are in direct conflict with the evidence that should drive a proper damages analysis, including the licensing history of the patents-in-suit which she chose to ignore. After acquiring the Groupware patents, Open Text embarked on ███████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ███ Then, at the same time as the hypothetical negotiation in this case, Open Text offered up the Groupware patents ███████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████ The licensing history for the Groupware patents thus is a far cry from the ████████████████████ in past damages Ms. Holt offers up, and *ResQnet* compels its exclusion for this reason as well. *ResQNet*, 594 F.3d at 870.

**Third**, Ms. Holt's methodology is unreliable with respect to both her proposed royalty rates and base. She provided no mathematical explanation for her royalty rates, instead offering ███ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████ Ms. Holt's "black box" conclusions on royalty rates are nothing more than her *ipse dixit*, and should be excluded on that basis. Moreover, and also contrary to Federal Circuit precedent, Ms. Holt failed to properly apportion out the myriad of non-accused functionalities in Box's products, instead ███████ ████████████████████████████████. Ms. Holt's damages opinions must be excluded on this independent ground too. *VirnetX, Inc. v. Cisco Systems, Inc.*, 767 F.3d 1308, 1326-29 (Fed. Cir. 2014) (excluding opinion where expert used entire value of Apple products when only FaceTime feature was accused of infringement).

## II. LEGAL STANDARDS

Because expert testimony can be "both powerful and quite misleading," federal judges have the duty to act as gatekeepers by admitting expert testimony only if it "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). In looking at the reliability of expert testimony, a court must weigh "whether that reasoning or methodology properly can be applied to the facts in issue," *Daubert*, 509 U.S. at 592-93, and expert testimony that is unsupported by the facts should be excluded. *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 81-82 (Fed. Cir. 2012) (excluding expert's reasonable royalty theory as unsupported by the record).

Here, the foundational inquiry is directed at 35 U.S.C. § 284, which provides: "Upon finding for the claimant, the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." Open Text seeks compensation based only on a reasonably royalty approach. A reasonable royalty is the amount that Box would have paid Open Text "for a license in a hypothetical world just before infringement began." *Lucent*, 580 F.3d at 1324. The calculation of the reasonable royalty is a two-step process. First, a royalty base, or the "revenue pool implicated by the infringement," must be determined. *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, 2013 U.S. Dist. LEXIS 120403, *7 (N.D. Cal. 2013) (*citing Cornell Univ. v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 286 (N.D.N.Y. 2009)). Second, a royalty rate, or "the percentage of that pool adequate to compensate the plaintiff for that infringement," must be determined. *Id.* Ms. Holt's opinions do not support either prong of this two-step process.

## III. MS. HOLT'S ROYALTY RATE OPINIONS ARE FUNDAMENTALLY FLAWED AND MUST BE EXCLUDED

Ms. Holt opines that the royalty rate for the Groupware patents should be ███, and the rate for the File Synchronization patents should be ███. But she improperly arrives at these opinions with the aid of ████████████████████████████████, and provides no calculations or other quantitative measures to explain those rates. Her testimony therefore should be excluded.

**A. Ms. Holt Improperly Relies On ████████████████████ For Her Royalty Rate Opinions**

It is well-settled that "damages experts cannot use non-comparable licenses, with little relationship to the claimed invention or parties-in-suit, as a basis for calculating reasonable royalties." *Oracle Am., Inc. v. Google, Inc.*, 847 F. Supp. 2d 1178, 1187 (N.D. Cal. 2012) (*citing ResQNet*, 594 F.3d at 870). The Federal Circuit's opinion in *ResQNet* is instructive. There, the Federal Circuit rejected a plaintiff's attempt to inflate the reasonable royalty rate through non-comparable licenses. As the Federal Circuit explained, the plaintiff's expert "used licenses with no relationship to the claimed invention to drive the royalty rate up to unjustified double-digit levels." *ResQNet*, 594 F.3d at 870. None of the licenses "even mentioned the patents in suit or showed any other discernible link to the claimed technology." *Id*. The Federal Circuit held that courts and experts "must consider licenses that are commensurate with what the defendant has appropriated. If not, a prevailing plaintiff would be free to inflate the reasonable royalty analysis with conveniently selected licenses without an economic or other link to the technology in question." *Id*. at 872; *see also LaserDynamics*, 694 F.3d at 72-73 (reversing ruling permitting reliance on license evidence where "comparability between [licenses] and a hypothetical license to the [patent-in-suit] was missing."). Because the district court improperly considered these licenses in determining a reasonable royalty, the Federal Circuit vacated the damages award. *ResQNet*, 594 F.3d at 873.

*Lucent* is in accord. There, in assessing the various agreements before the trial court, the Federal Circuit explained: "First, some of the license agreements are radically different from the hypothetical agreement under consideration for the [patent-in-suit]. Second, with the other agreements, we are simply unable to ascertain from the evidence presented the subject matter of the agreements, and we therefore cannot understand how the jury could have adequately evaluated the probative value of those agreements." *Lucent*, 580 F.3d at 1327-28. Reversing the jury's damages award, the court concluded that the damages award "cannot stand solely on evidence which amounts to little more than a recitation of royalty numbers, one of which is arguably in the ballpark of the jury's award, particularly when it is doubtful that the technology of those license agreements is in any way similar to the technology being litigated here." *Id*. at 1329; *see also TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1016 (N.D. Cal. 2013) (prohibiting damages expert from referencing non-comparable patent and technology licenses reflecting royalty range of $.01-$.25 per

unit and rejecting argument that the rates were used for the limited purpose of noting they "support" the expert's royalty rate opinion); *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, No. C03-1431 PFJ, 2012 WL 761712, at *13 (N.D. Cal. 2012) (licenses which damages expert used to show "market range" of 4%-25% were non-comparable and therefore did not support the royalty rate plaintiff sought).

1. **Ms. Holt Conceded, As She Had To, That** ███████

Ms. Holt did not rely on any patent licenses, let alone patent licenses to the patents-in-suit. Instead, she relied on ███████ to reach her conclusions on a royalty rate for the Groupware and File Synchronization patents. ███████

---

[2] *See also id* ███████

No.: C 13-04910 JD — 5 —



1  ███, Ms. Holt concluded that the royalty rate would be ███. *Id.* at Exh. A at 73. And, for the
2  File Synchronization patents, she opined that the royalty rate would be ███ *Id.* at 91.
3  Notwithstanding her reliance on them, Ms. Holt repeatedly conceded, as she had to, that ███
4  ████████████████████████████████████████████████████████████████████████████████
5  ███████████████████ *See, e.g., id.* at Exh. B at 136:20-25; 155:9-18; 145:19-146:3; 156:14-23;
6  157:5-16; 173:23-175:24. This alone warrants exclusion of her opinions under *ResQNet* and *Lucent*.
7      Apart from this fatal flaw, her opinions predicated on ████████████████ fall well
8  outside the bounds of reliability for other reasons as well. First, ████████████████████
9  ████████████████████████████████████████████████████████████████████████████████
10 ████████████████████████████████████████████████████████████████████████████████
11 ████████████████████████████████████████████████████████████████████████████████
12 ████████████████████████████████████████████████████████████████████████████████
13 ████████████████████████████████████████████████████████████████████████████████
14 ████████████████████████████████████████████████████████████████████████████████
15 ████████████████████████████████████████████████████████████████████████████████
16 ████████████████████████████████████████████████████████████████████████████████
17 ████████████████████████████████████████████████████████████████████████████████
18 ████████████████████████████████████████████████████████████████████████████████
19 ████████████████████████████████████████████████████████████████████████████████
20 ████████████████████████████████████████████████████████████████████████████████
21 ████████████████████████████████████████████████████████████████████████████████
22 ████████████████████████████████████████████████████████████████████████████████
23 ████████████████████████████████████████, and are not a reliable basis for forming a damages opinion
24 in this case. *See Atlas IP, LLC v. Medtronic, Inc.*, 2014 U.S. Dist. LEXIS 158787, *16-*18 (S.D.
25 Fla. Oct. 6, 2014) (excluding royalty rate opinion based in part on non-comparable "industry" rates).
26     **2.    Ms. Holt's Efforts At Deposition To ████████████████████**
27 **████████████████ Confirms The Lack Of Reliability In Her Testimony**
28     In deposition, Ms. Holt ███████████████████████████████████████████

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1 ████████████████████████████████████████████████████████
2 ██████████████████████████████████████████████. A few excerpts from
3 her deposition underscore why her royalty rate testimony must be excluded:
4 ████████████████████████████████████████████████████████
5 ██████████████
6 ██████████████████████████
7 ████████████████████████████████████████████████████████
8 ██████████████████████████████████████████████████████
9 ████████
10 ███████████████████████████
11 ████████████████████████████████████████████████████████
12 ███████████████████████████████████████
13 █████████████████████████████████████████████
14 █████████████████████████████
15 ████████████████████████████████████████████████████████
16 ████████████████████████████████████████████████████████
17 ████████████████████████████████████████████████████████
18 ████████████████████████████████████████████████████████
19 ████████████████████████████████████████████████████████
20 ████████████████████████████████████████████████████████
21 ████████████████████████████
22 ████████████████████████████████████████████████████████
23 ████████████████████████████████████████████████████
24 ████████████████████████████
25 ████████████████████████████████████████████████████████
26 ████████████████████████████████████████████████████████
27 ████████████████████████████████████████████████████████
28 ████████████████████████████████████████████

REED SMITH LLP
A limited liability partnership formed in the State of Delaware



Experts are not permitted to manipulate their opinions to preserve admissibility. The willingness to say what is expedient is precisely what *Daubert*'s gatekeeping principles are aimed at. Here, Ms. Holt ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆ That must be excluded because it could create mischief at trial. *See, e.g., LaserDynamics*, 694 F.3d at 69 (excluding testimony when valuation contained "no credible economic analysis" and where numbers were merely "plucked out of thin air based on vague qualitative notions"); *DSU Med. Corp. v. JMS Co.*, 296 F. Supp. 2d 1140, 1158 (N.D. Cal. 2003) (excluding damages expert testimony where picking a "million dollar number" was "classic *ipse dixit*" because "the analytical gap between the data used and the opinion offered [wa]s far too great to permit the opinion to be introduced"); *Reinsdorf v. Skechers, U.S.A.*, 922 F. Supp. 2d 866, 879-80 (C.D. Cal. 2013) (excluding damages expert testimony that lacked "specific data or discernible methodology" to illustrate the relationship between infringing conduct and specific income).

On the one hand, if Ms. Holt's reliance ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ in her report is accepted, her royalty rate opinions are a "black box" because she offers no link between the royalty ranges and the rates she arrives at. If, on the other hand, Ms. Holt's ▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ is to be believed, there is nothing to support her proposed rates, and the mystery behind her rates only grows larger. In either event, Ms. Holt does not use any calculations

or other quantitative measures to arrive at her rates. And, it is undisputed that she can point to no patent license supporting her rates. ███████████████

███████████████████████████
███████████████████████████
███████████████████████████
███████████████████████████
███████████████████████████
███████████████████████████
███████████████████████████

Mitchell Decl., Exh. A at 72-73 (Groupware); 91-92 (File Synchronization). From these factors, she then concludes: ███████████████████████████
███████████████████████████

██ *Id.* But there is no analytical bridge between the listed factors and the rate she ultimately arrives at.[3] Controlling law will not permit that unsupported leap.[4] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146-47 (1997) (warning courts not to "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert" and upholding district court decision to exclude expert opinion that was "extrapolated . . . from far removed studies" without explanation); *Whitserve LLC v. Computer Packages, Inc.*, 694 F.3d 10, 26, 29-31 (Fed. Cir. 2012) (excluding expert testimony regarding royalty rate because "no analysis is offered to the jury which would allow them to evaluate the probative value of those numbers.") (*citing Lucent*, 580 F.3d at 1229); *GPNE Corp. v. Apple*

---

[3] Ms. Holt's ████████████████
████████████████████████████
████████. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318-1321 (Fed. Cir. 2001) (excluding expert testimony for failure to satisfy EMVR where expert used entire revenues as a reasonableness "check" on his royalty rate, and noting that evidence of this nature could not "help but skew the damages horizon for the jury, regardless of the contribution of the patented component.").
[4] When given another opportunity to explain the methodology underlying her proposed rate at deposition, Ms. Holt ██
████████████████████████████
████████████████████████████



1   *Inc.*, 2014 U.S. Dist. LEXIS 53234, *16-*20 (N.D. Cal. 2014) (excluding expert opinion where expert based royalty rate on "all the evidence in the record" and his "30 years of experience in the licensing world and the valuation of intellectual property," but no "specific math" was performed).

### B. Ms. Holt Ignored The Licensing History For The Groupware Patents In Determining Her Purported Royalty Rate

Ms. Holt's departure from reality is further confirmed by her failure and refusal to consider historical, factual evidence directly relevant to the value of any license for the Groupware patents. [text redacted]

---

[5] [text redacted]. Mitchell Decl., Exh. M at 285.



No.: C 13-04910 JD — 12 —
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF MS. KRISTA HOLT

1 ████████████████████████████████████████████
2 ████████████████████████████████████████████
3 ████████████████████████████████████████████
4 ████████████████████████████████████████████
5 ████████████████████████████████████████
6 ████████████████████████

### IV. MS. HOLT'S ROYALTY BASE OPINIONS ARE ALSO FUNDAMENTALLY FLAWED

Ms. Holt ████████████████████████████████████████████ ████████████████ but her "methodology" for each does not pass legal muster, further warranting exclusion. Mitchell Decl., Exh. A at 60; 78-79. As the Federal Circuit has made clear, "a patentee must take care to seek only those damages attributable to the infringing features." *VirnetX*, 767 F.3d at 1326. Thus, a patentee is permitted to assess damages based on the entire value of a multi-component product only where "the patented feature creates the basis for customer demand or substantially creates the value of the component parts." *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1268 (Fed. Cir. 2013). In the absence of such a showing, the patentee must calculate the royalty base by isolating the value of the accused feature via the process of apportionment. *VirnetX*, 767 F.3d at 1328-29; *see also Golden Bridge Tech. v. Apple Inc.*, 2014 U.S. Dist. LEXIS 68564, *15-18 (N.D. Cal. 2014) (excluding royalty base opinion where expert used entire value of Apple handsets when only certain chipsets were accused of infringement); *Dynetix Design Solutions*, 2013 U.S. Dist. LEXIS 120403, *7-12 (excluding royalty base opinion where expert failed to apportion the value of the optional accused feature).

Here, for both the Groupware and File Synchronization patents, Ms. Holt ███████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████

[REDACTED]

But, the percentages Ms. Holt applied to Box's subscription revenues for both the Groupware and File Synchronization patents fail to properly apportion. Specifically, she made no attempt to measure the value of the accused functionalities relative to the myriad non-accused functionalities, and instead attempted to use proxies for the required apportionment that lead to inflated and unreliable "apportioned royalty bases."

For the Groupware patents, [REDACTED] *Id.* at 60-61. However, the number of new collaborators does not accurately reflect the actual usage – i.e., the value – of collaboration. For example, a new collaborator could collaborate once and then proceed to use Box exclusively for non-accused file storage and/or sharing. Such a new collaborator would be counted the same under Ms. Holt's methodology as a new collaborator who proceeded to collaborate as 5%, 50%, or 100% of his or her use of the Box platform.[6] Similarly, Ms. Holt made no attempt to measure the usage of collaboration versus the many non-accused functionalities.[7] Ms. Holt could have undertaken this task – via, for example, a survey of Box users – but failed to do so.

For the File Synchronization patents, [REDACTED]

---

[6] Ms. Holt also failed to accurately calculate the number of new unique collaborators. Instead of adding up the number of Box users who joined Box by accepting collaboration invitations (i.e., new unique collaborators), she [REDACTED] This apples-to-oranges calculation artificially and improperly inflated Ms. Holt's collaboration percentage.

[7] [REDACTED], there are many non-accused functionalities, including file storage, file/keyword searching, file previewing, mobile access and mobile security, among several others. Mitchell Decl., Exh. A at 60, 19-21; *see also* Mitchell Decl., Exh. O.

No.: C 13-04910 JD — 14 —
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF MS. KRISTA HOLT

██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████████ Again, however, Ms. Holt made no attempt to apportion the value of Box Edit relative to many other non-accused features.[8]

Ms. Holt's "apportionment" methodology in each case is analogous to the damages expert's approach the Federal Circuit found inadmissible in *VirnetX*. There, the expert applied his royalty rate to the entire cost of the Apple products containing the accused FaceTime feature. *VirnetX*, 767 F.3d at 1328-29. The court found this improper: "Weinstein did not even attempt to subtract any other unpatented elements from the base," such as the touchscreen, camera, phone, and other features. *Id.*; *see also Power Integrations, Inc. v. Fairchild Semiconductor International, Inc.*, Case No. C 09-5235 MMC, Dkt. No. 666 (N.D. Cal. Nov. 25, 2014) (ordering new damages trial because expert failed to "apportion the royalty solely to the patented features" of the accused chip). Because Ms. Holt "failed to apportion value between the patented features and the vast number of non-patented features contained in the accused products," she did not "carefully tie proof of damages to the claimed invention's footprint in the marketplace." *VirnetX*, 767 F.3d at 1329 (*citing ResQnet*, 594 F.3d at 869). Accordingly, her testimony should be excluded on this basis too.

## V. CONCLUSION

At bottom, Ms. Holt's opinions are wholly unreliable, and should be excluded.

Dated:   December 5, 2014                 Respectfully submitted,

/s/ *John P. Bovich*
John P. Bovich (SBN 150688)
REED SMITH LLP

*Attorneys for Defendants Box, Inc. and Carahsoft Technology Corporation*

---

[8] *See* Mitchell Decl., Exh. A at 78-79, 20-21; *see also* Mitchell Decl., Exh. O.