UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OPEN TEXT S.A.,<br><br>    Plaintiff,<br><br>    v.<br><br>BOX, INC., et al.,<br><br>    Defendants. | Case No. 13-cv-04910-JD<br><br>**SUPPLEMENTAL CLAIM CONSTRUCTION ORDER**<br><br>Re: Dkt. No. 466 |

This patent case involves four patent claims directed at bi-directional synchronization of a cache.[1] The Court previously construed a number of claim terms whose meaning was disputed by the parties, *see* Dkt. No. 294, but the parties have managed, on the eve of trial, to come up with another claim construction dispute, which under Federal Circuit precedent, the Court must resolve prior to the jury trial scheduled for February 2, 2015. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it.").

The dispute concerns the construction of "database," which is found in each of the asserted claims. For example, claim 1 of the '515 patent, from which asserted claim 10 depends, recites the following:

> A system for synchronizing a cached file with a **database**:
>
> a computer processor;
>
> a network connection device operable to establish a connection with a **database**;

---

[1] Specifically, claims 10 and 27 of U.S. Patent No. 7,062,515; claim 4 of U.S. Patent No. 7,590,665; and claim 11 of U.S. Patent No. 8,117,152.

>a computer readable memory containing a local cache; and
>
>a software program, executable to run in user space on a client computer, stored on a computer medium and executable by the computer processor to:
>
>send a request to the **database** for a file;
>
>receive the file at the client computer directly from a **database**;
>
>store the file as a cached file in the local cache;
>
>notify the operating system to open the cached file using a locally running application associated with the file type for the cached file;
>
>determine if the cached file at the client computer has been modified by a user using the locally running application based on a notification from a file management system of an operating system; and
>
>if the cached file has been modified, save the cached file from the cache directly to the **database**.

'515 patent, claim 1 (emphasis added). Claim 10 additionally requires the following elements:

- "the software program is further executable to receive a **database** notification from a **database** management program that an additional user has modified the **database** asset." '515 patent, claim 9 (emphasis added).
- "the software program is further executable to provide a notice to a first user that the additional user has modified the **database** asset." '515 patent, claim 10 (emphasis added).

The Court previously construed "database asset" to mean "computer file stored in a database," *see* Dkt. No. 294 at 18, but "database" itself remains unconstrued.

What sparked the dispute is a new, dictionary-based definition that Open Text's expert, Professor Ketan Mayer-Patel, used to distinguish a prior art reference in his rebuttal expert report. In September 2013, Mayer-Patel took the position that the accused Box Edit add-on infringed the claim elements reciting a "database" because "the specification of the '515 patent describes a databases generally as centralized repositories of information, files, or database assets, including for example Microsoft Word documents," and Box Edit included such a centralized repository. *See* Declaration of Ketan Mayer-Patel in Support of Preliminary Injunction, Ex. A at 8, Dkt. No. 68-1. The same definition was repeated in Open Text's February 2014 infringement contentions, *see* Dkt. No. 466-2, and in Professor Mayer-Patel's October 2014 opening expert report on

infringement, *see* Mayer-Patel Opening Expert Report ¶ 253, Dkt. No. 316-8.

In his November 2014 rebuttal expert report on invalidity, however, Mayer-Patel argued that the allegedly prior art WS_FTP manual did not meet the "database" claim elements because a "popular 1999 computer dictionary" -- the fourth edition of the Microsoft Computer Dictionary -- defined "database" as "a file composed of records, each containing fields together with a set of operations for searching, sorting, recombining, and other functions" and the manual did not disclose a database so defined. *See* Mayer-Patel Rebuttal Expert Report ¶¶ 120, 123, Dkt. No. 316-7.

Box now seeks to have "database" construed to mean a "centralized repository of information, files, or database assets" (Mayer-Patel's original definition), which it says is the plain and ordinary meaning of the term. Open Text argues that the term's plain and ordinary meaning will be apparent to a jury and thus the term need not be construed -- but it nevertheless that the Microsoft Computer Dictionary "accurately defines 'database' as 'a file composed of records, each containing fields together with a set of operations for searching, sorting, recombining, and other functions.'" Joint Claim Construction Statement at 2, Dkt. No. 466. Such a definition is obviously inconsistent with Box's understanding.

The relevant legal standards for claim construction are discussed in the Court's previous claim construction order, and will not be repeated here. *See* Dkt. No. 294 at 2-3. Box's argument is a good illustration of the Federal Circuit's warnings about the dangers of relying on extrinsic evidence to construe claims, because "[i]n the course of litigation, each party will naturally choose the pieces of extrinsic evidence most favorable to its cause." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1319 (Fed. Cir. 2005) (en banc). Open Text has picked a dictionary that defines "database" to include a number of limitations, but another technical dictionary, for example, defines it to mean merely: "(1) Set of interrelated files that is created and managed by a DBMS [database management system]. (2) Any electronically-stored collection of data." Alan Freedman, *The Computer Glossary* 123 (6th ed. 1993).

The Court therefore looks to the intrinsic evidence. Box points to the fact that the shared specification of the asserted patents refers to "a general repository of information such as a

3

database" in support of its construction. *See* '515 patent, 1:24-25. But that shows only that a database is a general repository of information, not that a database requires nothing more.

The only definition of "database" that the parties point to in the intrinsic record is in U.S. Patent No. 5,202,982, which is listed on the face of the patent and thus constitutes intrinsic evidence. *See V-Formation, Inc. v. Benetton Group SPA*, 401 F.3d 1307, 1311 (Fed. Cir. 2005). That patent states, "A database is a collection of information which is organized and stored in a predetermined manner for subsequent search and retrieval." '982 patent, 1:28-30. The Court adopts this definition, noting that the asserted patents make clear that the "information" stored in a database can include files. *See* '515 patent, claim 1 ("send a request to the database for a file"); *id.* 1:14-15 ("Centralized databases are becoming increasingly popular for storing electronic files or 'database assets.'") It also bears emphasizing that while this definition requires that the information be organized in a predetermined manner, nothing in it requires fields, operations for searching, sorting, and recombining, or any of the other requirements found in Open Text's dictionary definition.

The Court construes "database" to mean "a collection of information which is organized and stored in a predetermined manner for subsequent search and retrieval." Because the parties have not had a chance to brief the effect, if any, this construction has on Box's motion for summary judgment of invalidity, *see* Dkt. No. 314, the Court denies that motion solely on that basis.

**IT IS SO ORDERED**.

Dated: January 28, 2015

_____
JAMES DONATO
United States District Judge